# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *People v. Pikes*, 2013 IL 115171

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. KEITH PIKES, Appellee. |
| Docket No. | 115171 |
| Filed | November 21, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | When a court in a murder trial did not abuse its discretion in admitting, as relevant to show motive, evidence that a member of the defendant's gang had shot at a member of a rival gang in a separate incident, and the appellate court erred in applying the rules of other-crimes evidence. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. James B. Linn, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Cause remanded. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette N. Collins, Michelle Katz and Veronica Calderon Malavia, Assistant State's Attorneys, of counsel), for the People.

Suzan-Amanda Ingram, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

Justices

CHIEF JUSTICE GARMAN delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1    Following a jury trial in the circuit court of Cook County, defendant, Keith Pikes, was convicted of one count of first degree murder and sentenced to 27 years in prison. The appellate court reversed his conviction and remanded for a new trial, concluding that the trial court erred in admitting evidence concerning a prior crime committed by defendant's codefendant, Lamont Donegan, in which defendant was not involved. 2012 IL App (1st) 102274. This court granted the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 2                                BACKGROUND

¶ 3    Defendant and Donegan were tried simultaneously before separate juries. They were both charged with the murder of Lorne Mosley, who was killed in a drive-by shooting on August 21, 2006. Prior to trial, the State sought admission of evidence that defendant and Donegan were members of the Four Corner Hustlers gang, which was involved in a conflict with the Gangster Disciples. The State also sought admission of evidence of a prior incident between Donegan and members of the Gangster Disciples (referred to herein as the scooter shooting). In that incident, which occurred a day or so prior to Mosley's murder, Quentez Robinson, a member of the Gangster Disciples, rode a scooter through Four Corner Hustlers territory, followed by other Gangster Disciples in a car. Donegan began shooting at Robinson, who rode off unharmed. The driver of the car struck Donegan, who later allegedly recruited defendant to assist him in exacting revenge for the incident. Defendant and Donegan allegedly made statements indicating their intention to seek revenge for the prior incident. In moving for admission of this evidence, the State reasoned that the earlier incident involving Donegan was related to the shooting of Mosley, thus providing an explanation for

it. The State also argued that the prior incident provided evidence of defendant's and Donegan's joint motive and intent. The State also sought admission of certain co-conspirator statements made by Donegan prior to and immediately following the Mosley shooting. The trial court granted the State's motions over defendant's objection. As to the motion to admit evidence of the scooter shooting, the trial court found the evidence to be relevant, more probative than prejudicial, and necessary to allow the jury to understand the context in which the Mosley shooting occurred.

¶ 4        The facts are not in dispute. Relevant to the issue in this appeal, the evidence showed that in August 2006, a feud began between the Gangster Disciples and the Four Corner Hustlers over the shooting by a Gangster Disciples member of Victor Parsons, who was a member of the Four Corner Hustlers. The feud involved the gangs shooting at each other. Robinson testified concerning the scooter shooting. On August 19, 2006, he was riding a scooter in Four Corner Hustlers territory. A car containing other Gangster Disciples was following him. Donegan ran into the street and began shooting at Robinson. The car then struck Donegan. Robinson did not report the incident to police.

¶ 5        Herbert Lemon, a member of the Gangster Disciples, testified that his gang and the Four Corner Hustlers were enemies and that they had been fighting and shooting at each other. He was in the car that was following Robinson on the scooter when Donegan shot at Robinson. The driver drove the car at Donegan, struck him, and drove away. Lemon was also present the following evening when Mosley was shot. He was in a group that included Robinson when he observed a car drive toward them. Defendant and Donegan were in the car. They began shooting at the group.

¶ 6        Brandon Merkson testified that there was an ongoing feud between the Gangster Disciples and the Four Corner Hustlers. Merkson was present at both the scooter shooting and the Mosley shooting. Regarding the scooter shooting, Merkson was in the car that struck Donegan after he shot at Robinson. At trial, Merkson denied telling the police that Donegan was the person who shot at Robinson. Merkson's statement and his grand jury testimony were entered into evidence.

¶ 7        Vernard Crowder testified, denying that he, defendant, and Donegan were members of a street gang. He acknowledged testifying before the grand jury but asserted that he had done so only because the prosecutor agreed to drop a domestic battery charge against him. He denied all of his grand jury testimony. Two assistant State's Attorneys testified concerning Crowder's grand jury testimony and a statement he made to police. Crowder stated that on the day of the Mosley shooting, he saw defendant standing near a "greyish black," older model Toyota car. Donegan was inside the car cleaning it. Defendant asked Crowder if he wanted to "go do business" on Corliss (a street that was in Gangster Disciples territory), which Crowder knew meant harming someone in the Gangster Disciples. Crowder declined because he was on probation. Defendant did not like this answer and reminded Crowder that "these are the same people that killed Victor." Later, Crowder heard gunshots coming from Corliss. A few days after the shooting, Crowder was with Donegan and DeAngelo Coleman. Donegan told Crowder that he could not get caught with the gun he had with him because "it had a body on Corliss." Crowder understood this to mean that Donegan had used the gun to kill Mosley.

¶ 8        DeAngelo Coleman testified, denying being a gang member or hearing anything about the Mosley shooting. He denied that there was any incident involving a scooter. An assistant State's Attorney published to the jury Coleman's statement to police. In the statement, Coleman acknowledged that he, Donegan, and defendant were members of the Four Corner Hustlers gang. Coleman stated that on the day of the scooter shooting incident, he heard gunshots. He ran outside and saw Donegan lying on the ground. Donegan told Coleman that he had just shot at Robinson who was on a scooter and that a car following Robinson had struck Donegan. The next day, Coleman was with defendant and Donegan. During the conversation, Donegan said that someone had to pay for the scooter incident and that he was going to kill a Gangster Disciple. Coleman heard defendant say that he would steal a car to use for the planned shooting on Corliss and that Donegan had a "jiggler" key that would fit older model Toyotas. The key would allow a user to operate the door locks and ignition of a car. Coleman later saw defendant driving a Toyota Camry. He saw defendant and Donegan cleaning out the car. Defendant and Donegan both had guns that they put in the car. They drove the car away. The day after the Mosley shooting, Coleman saw defendant and Donegan. Both men described how the shooting took place. Defendant said that he drove slowly down the block. When they saw a group of young men at the usual Gangster Disciples spot, Donegan fired his gun.

¶ 9        The trial court gave the jury Illinois Pattern Jury Instruction 3.14, which addresses proof of other offenses or conduct (Illinois Pattern Jury Instructions, Criminal, No. 3.14 (4th ed. 2000)). The instruction alerted the jury that evidence had been received that defendant was involved in conduct other than that charged in the indictment. The jury was instructed that this evidence was to be considered on the issues of defendant's intent, motive, and opportunity. The jury was instructed to determine whether defendant was involved in the uncharged conduct. As stated, the jury convicted defendant, and the trial court sentenced him to 27 years in prison.

¶ 10                                        ANALYSIS

¶ 11        Evidence of other crimes is admissible if it is relevant for any purpose other than to show the defendant's propensity to commit crime. *People v. Wilson*, 214 Ill. 2d 127, 135 (2005). Other-crimes evidence is admissible to show *modus operandi*, intent, motive, identity, or absence of mistake with respect to the crime with which the defendant is charged. *People v. Robinson*, 167 Ill. 2d 53, 62-63 (1995). However, even where relevant, the evidence should not be admitted if its probative value is substantially outweighed by its prejudicial effect. *People v. Moss*, 205 Ill. 2d 139, 156 (2001).

¶ 12        The admissibility of evidence rests within the discretion of the trial court, and its decision will not be disturbed absent an abuse of that discretion. *People v. Becker*, 239 Ill. 2d 215, 234 (2010).

¶ 13        In *People v. Thingvold*, 145 Ill. 2d 441 (1991), this court summarized the standards for admissibility of other-crimes evidence:

              "Evidence of crimes for which a defendant is not on trial is inadmissible if
              relevant merely to establish his propensity to commit crime. [Citations.] Such

                                                    -4-

evidence overpersuades the jury, which might convict the defendant only because it feels he is a bad person deserving punishment. [Citations.] Evidence of the commission of other crimes is admissible, however, when such evidence is relevant to prove *modus operandi*, intent, identity, motive, or absence of mistake. [Citations.] In fact, this court has held that evidence of other crimes committed by the defendant may be admitted if relevant to establish any material question other than the propensity to commit a crime. [Citations.] When such evidence is offered, the trial judge must weigh the relevance of the evidence to establish the purpose for which it is offered against the prejudicial effect the introduction of such evidence may have upon the defendant." *Id.* at 452.

¶ 14    Our Rule of Evidence 404(b) (Ill. R. Evid. 404(b) (eff. Jan. 1, 2011)) provides that, with certain specified exceptions, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Such evidence may also be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶ 15    When the State seeks admission of other-crimes evidence, it must first show that a crime took place and that the defendant committed it or participated in its commission. *Thingvold*, 145 Ill. 2d at 455. The appellate court found that the State had failed to meet this threshold requirement, and therefore the evidence of the scooter shooting by Donegan was inadmissible against defendant. The appellate court rejected the State's argument that the evidence was not admitted as other-crimes evidence, but was admitted because it was relevant evidence of defendant's motive for the Mosley shooting. The appellate court focused on the fact that the scooter shooting was evidence of a prior uncharged crime sought to be introduced against defendant at his trial. The court found that this fact required the State to show that defendant committed the prior crime. According to the appellate court, since the State could not make that showing, the evidence of the scooter shooting was inadmissible. The appellate court reasoned that the evidence met the definition for other-crimes evidence because it was evidence of a crime other than the crime charged sought to be introduced against defendant at his trial. The appellate court also noted that the State itself had described the evidence as other-crimes evidence, pointing to the State's motion to admit evidence of the scooter shooting, the title of which was, "Motion to Admit Proof of Other Crimes/Other Bad Acts." 2012 IL App (1st) 102274, ¶¶ 29-30. The appellate court drew a distinction between "simple, relevant evidence and the peculiar concerns that are involved in the consideration of other crimes evidence." The appellate court criticized the State for presenting no authority for its suggestion that the threshold requirements for the admission of other-crimes evidence may be bypassed as long as that evidence provides a background or context for the crime charged. *Id.* ¶ 32.

¶ 16    The rule that evidence of the commission of other crimes, wrongs, or acts by the accused is inadmissible for the purpose of showing a propensity to commit crimes is an aspect of the rule that the prosecution may not introduce evidence of a character trait of the accused. Michael H. Graham, Graham's Handbook of Illinois Evidence § 404.5 (10th ed. 2010). The concern is not that such evidence is lacking in probative value, but that it may overpersuade the jury, which might convict the accused because it believes he or she is a bad person.

*People v. Richardson*, 123 Ill. 2d 322, 339 (1988). It is evident, therefore, that the concerns underlying the admission of other-crimes evidence are not present when the uncharged crime or bad act was not committed by the defendant. In such a case, there is no danger that the jury will convict the defendant because it believes he or she has a propensity to commit crimes. Thus, the threshold requirement to show that the defendant, and not someone else, committed the crime does not apply. The evidence was clear that defendant was not involved in the scooter shooting. Thus, the appellate court erred in holding that the evidence of that shooting was inadmissible on the ground that the State did not show that defendant committed or participated in that shooting. We therefore conclude that the evidence of the scooter shooting was not other-crimes evidence, and the appellate court erred in analyzing it as such.

¶ 17    The State argues that the shooting was an integral part of events culminating in the Mosley shooting. The State notes that, by definition, the other-crimes doctrine concerns the admission of unrelated other crimes committed by the defendant to suggest that the defendant committed the crime with which he or she was charged by improperly showing either a propensity to commit crimes, or by properly showing the defendant's intent, motive, *modus operandi*, or common design. The State maintains that the scooter shooting was not an unrelated crime, but was part of the charged crime in that it was the precipitating event that led to the Mosley shooting. The State draws a distinction between "intrinsic" evidence that is somehow related to the charged crime or is part of a continuing narrative of events giving rise to the charged crime, and "extrinsic" evidence, which is comprised of traditional other-crimes evidence.

¶ 18    Defendant argues that the scooter shooting was a "classic other crime" because it was not related to the charged offense and was therefore not inextricably intertwined with the Mosley shooting. Defendant contends that the Mosley shooting can be fully shown without reference to the scooter shooting. Counsel for defendant conceded at oral argument that the incident in which Donegan was struck by the car containing members of the Gangster Disciples is relevant and was properly admitted. Thus, defendant challenges only the admission of the scooter shooting itself. Defendant's argument, however, hinges on the fact that defendant was not shown to have committed or participated in the scooter shooting. Defendant relies on this court's decision in *Thingvold*. There, the defendant was charged with soliciting another man, Nalan, to murder his wife, Barbara. The prosecution successfully sought the admission of evidence at trial of the defendant's prior bad acts. One man testified that the defendant had earlier spoken of wanting Barbara dead so he could collect on her life insurance. He had allegedly asked the man to wire money to a hired killer and in return promised to give the man a car. Another man testified that the defendant had asked him to kill Barbara so he could collect on her insurance. The prosecution also successfully sought the admission of evidence that the defendant had solicited a man to kill his first wife, Diane, in the 1970s. The defendant and Diane later divorced. The jury convicted the defendant of solicitation. The appellate court reversed and remanded for a new trial, holding that the evidence was improperly admitted. On further appeal, this court affirmed the appellate court. The court found that the testimony concerning Barbara was properly admitted as relevant to the defendant's motive to hire Nalan to kill Barbara for the purpose of obtaining life insurance proceeds. However, this court found the evidence concerning the defendant's

alleged solicitation of a man to kill Diane was improperly admitted, noting that the fact that the defendant may have solicited someone 10 years earlier to kill a different wife did not tend to prove that the defendant intended Nalan to kill Barbara when he solicited him. Rather, the court observed, this was an example of evidence admitted to show a defendant's propensity to commit a crime. *Thingvold*, 145 Ill. 2d at 455. *Thingvold* is inapposite to the case at bar because that case concerned prior bad acts of the defendant, not a third party. Thus, defendant's reliance on that case is misplaced.

¶ 19    The State argues that the scooter shooting incident was connected to the charged crime and was thus admissible under a line of authority allowing admission of evidence of other crimes that are "intrinsic" or related to the charged offense in some way, or are part of a "continuing narrative" of the events giving rise to the charged offense, or are "intertwined" with the charged offense. It notes that some courts have recognized a distinction between traditional other-crimes evidence (extrinsic) and evidence of an uncharged crime that is related to the charged offense (intrinsic). See, *e.g.*, *People v. Manuel*, 294 Ill. App. 3d 113, 123 (1997); *People v. Morales*, 2012 IL App (1st) 101911, ¶ 24; *People v. Rutledge*, 409 Ill. App. 3d 22, 25 (2011); *People v. Allen*, 184 Ill. App. 3d 438, 449 (1989), *overruled on other grounds*, 172 Ill. 2d 154 (1996). Other courts have treated "intrinsic" evidence as an exception to the general exclusion of other-crimes evidence. See, *e.g.*, *People v. Carter*, 362 Ill. App. 3d 1180, 1189-90 (2005); *People v. Evans*, 373 Ill. App. 3d 948, 958-59 (2007).

¶ 20    This court has recognized that evidence of other crimes may be admitted if it is part of the "continuing narrative" of the charged crime. *People v. Adkins*, 239 Ill. 2d 1, 33 (2010). Such uncharged crimes do not constitute separate, distinct, and disconnected crimes. *People v. Marose*, 10 Ill. 2d 340, 343 (1957). It is this latter type of crime with which the other-crimes doctrine is concerned. Notably, a distinguishing characteristic of *Adkins* and the State's cited cases is that in each of the cases, it was alleged that the *defendant* had committed the uncharged offense. Here, there is no dispute that defendant was not involved in the scooter shooting incident. In our case, therefore, it is unnecessary to make any distinction between extrinsic or true other-crimes evidence and evidence of uncharged offenses that is intrinsic, related to, or part of the continuing narrative of the charged offense. Because defendant was not involved in the scooter shooting incident, it was not an "other crime" for purposes of evaluating its admissibility under our Rule of Evidence 404(b) and the other-crimes doctrine. The fact that the challenged evidence consists of an uncharged offense does not, standing alone, require it to be analyzed under other-crimes principles. It is only when the defendant is alleged to have committed the prior offense that those principles apply. That is not the situation here. Rather than sow confusion by analyzing the scooter shooting evidence under terms such as "extrinsic" or "intrinsic" or as "inextricably intertwined" or as a "continuing narrative," we conclude that the admissibility of evidence of the scooter shooting incident in this case should be judged under ordinary principles of relevance.

¶ 21    Evidence is generally admissible if it is relevant. Ill. R. Evid. 402 (eff. Jan. 1, 2011). "Relevant evidence" is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ill. R. Evid. 401 (eff. Jan. 1, 2011). Even relevant

evidence, however, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 22    Defendant argues that his motive for the Mosley shooting was not the incident in which Donegan was hit by the car, but rather the shooting death of Victor Parsons, which had started the ongoing gang war. We disagree. The evidence at trial amply demonstrated that defendant was motivated to assist Donegan in retaliating against the Gangster Disciples for the injury caused to Donegan during the scooter shooting incident. The fact that defendant may have had a secondary motive does not mean that he was not also motivated to assist Donegan in retaliating against the Gangster Disciples for the scooter shooting incident.

¶ 23    Defendant argues that admission of the scooter shooting incident prejudiced him. He notes that the jury was instructed to determine whether defendant was involved in conduct other than that charged in the indictment. According to defendant, this instruction required the jury to speculate as to defendant's involvement in the scooter shooting. We reject this argument. Defendant overlooks the fact that evidence was produced at the trial that when Mosley was shot, defendant and Donegan were driving a car that they had stolen by use of a "jiggler" key. The jury instruction did not specify the particular uncharged offense it referred to, but since the evidence at trial clearly showed that defendant was not involved in the scooter shooting, the jury instruction must have referred to the stolen car. Thus, defendant was not prejudiced by this instruction with respect to the admission of the scooter shooting evidence.

¶ 24    Defendant also argues that evidence of the scooter shooting was improperly admitted because it was unnecessary to complete the narrative underlying the Mosley murder. According to defendant, the motive for the Mosley shooting was not the incident in which Donegan shot at Robinson, but rather the subsequent striking of Donegan by the car containing members of the Gangster Disciples. Defendant believes that the Mosley murder could have been fully related to the jury in an understandable manner without reference to Donegan shooting at Robinson. Defendant overlooks the fact that the car containing members of the Gangster Disciples was following Robinson as he rode the scooter into Four Corner Hustlers territory. This was not a random incident in which a bystander was struck by a car. There was evidence at the trial of a continuing gang war between the Gangster Disciples and the Four Corner Hustlers. Evidence of gang membership was admitted. The events in this case that culminated in the Mosley shooting were not only the car striking Donegan, but also Donegan's shooting at Robinson. These two events were linked and it would be illogical for the trial court to uncouple them and give the jury only half the story.

¶ 25    Defendant also argues that even though he was not shown to have participated in the scooter shooting incident, he was prejudiced by its admission into evidence because that incident, coupled with his gang association with Donegan, carries an inference of guilt by association. We note that evidence of gang membership was allowed in this case. While defendant objected to its admission in the trial court, he does not argue before this court that the trial court abused its discretion in admitting this evidence. This court has previously recognized that street gangs are regarded with considerable disfavor by other segments of our society. *People v. Gonzalez*, 142 Ill. 2d 481, 489 (1991). Moreover, this court has acknowledged that, particularly in metropolitan areas, there may be strong prejudice against

street gangs. *People v. Patterson*, 154 Ill. 2d 414, 458 (1992). Thus, this court has held that evidence indicating a defendant is a member of a gang or is involved in gang-related activity is admissible only where there is sufficient proof that membership or activity in the gang is related to the crime charged. *Id.* To the extent that defendant here is concerned about an implied inference that "birds of a feather flock together," any alleged inference would more likely have come from the evidence of gang membership, rather than from the scooter shooting incident in which defendant was clearly not involved. The evidence was uncontroverted that defendant was not present when Donegan shot at Robinson. The prosecution did not suggest otherwise to the jury. Thus, we reject defendant's argument.

¶ 26    We hold that the trial court did not err in admitting evidence that Donegan shot at Quentez Robinson and that he was immediately thereafter struck by a car containing members of the Gangster Disciples. The testimony at trial, specifically that of Robinson, Herbert Lemon, Brandon Merkson, Vernard Crowder, and DeAngelo Coleman, was relevant to show defendant's motive for the subsequent drive-by shooting in which Mosley was killed. Donegan was struck by the car immediately following his shooting at Robinson. The two events were intertwined and there was no reason to separate them, particularly where defendant was not involved in them. Any prejudice to defendant, if it existed, was far outweighed by the probative value of this evidence to show defendant's motive for the Mosley shooting. Accordingly, the trial court did not abuse its discretion in admitting this evidence, and the appellate court erred in reversing defendant's conviction and remanding for a new trial.

¶ 27                                    CONCLUSION

¶ 28    The appellate court erred in holding that evidence of the scooter shooting incident was improperly admitted at defendant's trial under the other-crimes doctrine. We hold that this doctrine was inapplicable here, where defendant neither committed nor participated in the prior scooter shooting incident. The evidence of that incident was relevant to show defendant's motive for the drive-by shooting that resulted in Lorne Mosley's death, and the trial court did not abuse its discretion in admitting the evidence for that purpose.

¶ 29    Because it determined that evidence of the scooter shooting was inadmissible and that defendant was prejudiced by its admission, thus requiring a new trial, the appellate court found it unnecessary to consider other issues raised by defendant on appeal. We now reverse the appellate court's judgment and remand to that court for consideration of those issues.

¶ 30    Appellate court judgment reversed.

¶ 31    Cause remanded.